United States District Court
Southern District of Texas
**ENTERED**
November 22, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Pascalle Bass, § § § *Plaintiff,* § § v. § § Kilolo Kijakazi § Acting Commissioner of Social § Security Administration, § § *Defendant.* § | Case No. 4:22-cv-03702 |

## **MEMORANDUM AND ORDER**

This is an appeal from an administrative ruling denying disability benefits. The case was transferred to the undersigned judge upon consent of the parties. Dkt. 14. After carefully considering the parties' cross-motions for summary judgment, Dkt. 13, 15, the administrative record, Dkt. 7, and the applicable law, the Court grants Defendant Kilolo Kijakazi's motion for summary judgment (Dkt. 15) and denies Plaintiff Pascalle Bass's motion for summary judgment (Dkt. 13).

## Background

Bass filed for social security benefits under Title II on September 26, 2019. R.243 (B2D). On November 19, 2020, she filed again under Title XVI, claiming a disability onset date of January 10, 2019.[1] R.247 (B4D). Her application claimed she suffered from depression, anxiety, chronic fatigue, severe joint pain, neurodermatitis, excessive constipation, alopecia, heart palpitations, daily insulin injections, and a back injury. R.266 (B1E). She listed her previous positions as sales/produce/stock, retail sales, retail, sales associate, and beauty analyst. R.267.

Bass's physical conditions largely stem from pituitary dwarfism, a birth defect for which she has received treatment since age six. R.420 (B1F). Relatedly, Bass suffers from multiple defects in her musculoskeletal and endocrine systems, as well as neurologic disorders. R.77 (B1A). In December 2019, a workplace injury exacerbated her physical issues. R.79. She has not had substantial gainful employment since January 10, 2020. R.13.

The Commissioner denied Bass's application for benefits, initially and upon reconsideration. R.107-09 (B3A, B4A, B5A). Bass requested a hearing before an administrative law judge (ALJ). R.167 (B10B). After the hearing, the ALJ issued a decision determining that Bass is not disabled. R.11-29.

---

[1] The ALJ's opinion misstated the foregoing dates, *see* R.11, but they are not material to the analysis.

The ALJ first concluded that Bass met the insured status requirements and had not engaged in substantial gainful activity since the alleged onset date. R.13-14. At step two, the ALJ found the following severe impairments under 20 CFR 404.1520(c) and 416.920(c): tethered spinal cord and L5-S1 posterior annular bulge, degenerative findings of the hips, Chiari malformation, insomnia, panhypopituitarism, growth hormone deficiency, secondary hypothyroidism, obesity, generalized anxiety disorder, panic disorder, and major depressive disorder. R.14. The ALJ also found that Bass's claimed "neurodermatitis, constipation, heart palpitations, alopecia, and knee impairment [were] not medically determinable impairments due to a lack of objective evidence." *Id.*

At step three the ALJ concluded Bass's physical impairments did not meet or medically equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1—in particular, listings 1.15, 1.16, and 1.18. R.14-15.

With respect to Bass's physical impairments, the ALJ then formulated the residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: the claimant can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently, can stand or walk in combination for 2 hours in an 8-hour workday with normal breaks, and can sit for 6 hours in an 8-hour workday with normal breaks. The claimant needs the opportunity to use a hand-held assistive device for ambulation in the work setting. The claimant can occasionally climb ramps and stairs, but cannot climb

3

>ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl, and can occasionally balance as defined in the Selected Characteristics of Occupations of the DOT. The claimant should avoid more than occasional exposure to extreme cold and vibration and must avoid all exposure to unprotected heights and machinery with moving mechanical parts.

R.17. Based on this RFC and testimony from a vocational expert (VE), the ALJ concluded that Bass was unable to perform her past relevant work. R.27. But the VE testified that an individual with Bass's age, education, work experience, and RFC would be "able to perform the requirements of representative SVP 2, unskilled occupations at the sedentary exertional level." R.28. Examples of this type of employment in the national economy include addresser, document preparer, and ad clipper. *Id.* The ALJ therefore concluded at step five that Bass was not disabled. R.29.

In reaching this determination, the ALJ deemed "not fully persuasive" the prior administrative findings of Dr. Nalini Tella and Dr. Carol Eades, who had assessed Bass's physical impairments. R. 25. The ALJ also concluded that the medical opinions of Dr. Stephanie Shields, Sara Hildreth, PA-C, and Dr. Matthew Henry were unpersuasive. R.25-26.

Bass unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council, R.1-3, which rendered the decision ripe for this Court's review. *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the

4

[Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## **Legal Standard**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence

supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

Bass challenges the ALJ's conclusion, at step three, that her physical impairments do not medically equal a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Bass also challenges the ALJ's formulation of the RFC. Both contentions are limited to the findings concerning Bass's physical limitations. *See generally* Dkt. 13.

### I. Legal framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted).

Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)). "Under this five-step approach,

6

if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II. Bass has not shown that the ALJ erred at step three.

Bass concedes that her physical impairments do not meet a listed impairment. Dkt. 13 at 10. Instead, she insists that the ALJ needed to obtain a medical opinion before determining if her conditions medically equal a listing, and that the ALJ's failure to obtain such an opinion requires reversal. *Id.* at 11-14. The Court disagrees.

First, Bass primarily relies on case law predating adoption of the relevant standard. *Compare* Dkt. 13 at 11-12, *with* SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017). The pertinent standard, SSR 17-2p, did not require the ALJ to obtain a medical opinion on this issue. It requires the record to include an expert opinion only if the ALJ finds the "individual *is disabled* based on medical equivalence at step 3." SSR 17-2p, 2017 WL 3928306 at *3 (emphasis added). By its terms, this section does not apply when the ALJ finds that a claimant does *not* qualify as disabled at step three.

7

Second, SSR 17-2p states that an ALJ is "not require[d] ... to obtain ME evidence" if the ALJ finds "the evidence does not reasonably support a finding that the individual's impairment(s) medically equal[] a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4; *see also Strauss v. Saul*, 2020 WL 1650758, at *5 (S.D. Tex. Mar. 25, 2020) (SSR 17-2p "plainly indicates that the ALJ is not required to seek medical expert advice."). That is what the record reflects here.

The ALJ had a substantial basis to conclude that Bass's physical limitations do not medically equal a listed impairment. To medically equal a listing, an impairment must be "'at least equal in severity and duration to the criteria of any listed impairment.'" *Aleman v. Saul*, 2021 WL 966075, at *7 (S.D. Tex. Mar. 15, 2021) (quoting 20 C.F.R. § 404.1526(a). When considering whether a combination of impairments medically equate to a listing, those impairments must be "at least of equal medical significance to those of a listed impairment." 20 C.F.R. § 404.1526(b)(3).

The ALJ evaluated Bass's medical impairments under listings 1.15, 1.16, and 1.18. R.14-15. These listings share a common denominator, subpart D, which requires either that (1) the claimant needs to use a two-handed assistive device or (2) the claimant cannot use "one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements" while also using a medically necessary one-handed assistive

device.[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.15(D)(1)-(2), 1.16(D)(1)-(2), 1.18(D)(1)-(2).

The first alternative under subpart D does not apply because Bass's records do not suggest that she needed a two-handed assistive device like a walker or wheelchair. In fact, Bass's own doctors advised against using a wheelchair. R.82, 119, 596, 617, 634.

As for the second alternative, Bass does use a cane. R.96, 100 118, 621, 624. But there is no indication that Bass lacks the ability to balance with her cane while using her other arm and hand for work activities. To the contrary, except for a minor limitation on lifting and carrying, Bass's records reflect that she has full use of her upper extremities, including passable grip strength, dexterity, and range of motion. *See* R.81, 536. Based on this evidence, the ALJ could properly forgo obtaining a medical expert and conclude that Bass's impairments do not medically equal a listing.

The same evidence undermines Bass's contention that the ALJ's alleged failure to develop the record by obtaining a medical opinion warrants reversal. "Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Accordingly, an ALJ's failure to

---

[2] Listings 1.15 and 1.18 can also be satisfied if the claimant cannot use both upper extremities to complete work-related tasks. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 1.15(D)(3), 1.18(D)(3). Bass does not allege that her hands and arms are impaired in that way.

9

develop the record adequately warrants reversal "only if a claimant shows that he was prejudiced as a result." *Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994). "A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012).

Bass declares that "evidence of record supports a finding of medical equivalenc[e]," but she does not explain how or why that is so. *See* Dkt. 13 at 11-14. Nor does Bass identify any record evidence supporting her position. She has therefore failed to meet her burden to demonstrate prejudice. *See Alvarado v. Berryhill*, 2020 WL 420840, at *6 (S.D. Tex. Jan. 3, 2020) (no prejudice where claimant did not "explain what another expert would have added or how further development would have altered the result"), *adopted by* 2020 WL 419730 (S.D. Tex. Jan. 25, 2020); *Anderson v. Astrue*, 2011 WL 3331821, at *8 (N.D. Tex. July 11, 2011) (no prejudice because claimant failed to show "how a specific consideration of medical equivalence might lead to a different conclusion"), *adopted by* 2011 WL 3347857 (N.D. Tex. July 29, 2011). And given the evidence discussed above, there is no indication that obtaining another expert opinion would have altered the ALJ's conclusion that Bass's limitations do not medically equal listings 1.15, 1.16 or 1.18. The ALJ did not commit error, let alone a reversible one, at step three.

### III. Bass also fails to show that the ALJ erred when formulating the RFC.

Bass contends that the ALJ did not consider certain VE testimony nor properly develop the record with medical opinions when formulating the RFC. Dkt. 13 at 5-11. The RFC is a predicate to steps four and five that determines "the most the claimant can still do despite [her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Kneeland*, 850 F.3d at 754 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005)). "The ALJ is responsible for determining an applicant's residual functional capacity." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546); *see also* 20 C.F.R. § 404.1527(d)(2) (The Commissioner has the final responsibility for opinions, including the RFC). In determining the RFC, the ALJ examines all medical evidence in the record. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); 20 C.F.R. § 404.1545 (RFC is based on "all the relevant evidence in [an applicant's] case record").

Because substantial evidence supports the RFC in this case, the ALJ did not have a duty to further develop the record. There is no basis for reversal.

### A. Substantial evidence supported the RFC.

During the hearing, the VE testified that an individual with the following limitations would be unable to work: (1) if the individual needed a cane to stand, as opposed to using a cane for walking, (2) if she would miss two

11

days each month, or (3) she would be off task 20% of the time. *See* R.67-69. The ALJ's opinion did not address these hypotheticals. Bass contends this is reversible error. *See* Dkt. 13 at 5-8. According to the Commissioner, however, the ALJ did not need to address these hypothetical situations that the record evidence did not support. *See* Dkt. 15-1 at 6. The Commissioner is correct.

"When hypothetical testimony by a vocational expert is unsupported by the evidence, the ALJ may properly disregard that testimony." *See Jenkins v. Astrue*, 250 F. App'x 645, 647 (5th Cir. 2007) (citing *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985)). The same principle confirms that an ALJ need not consider a VE's opinion about jobs available to someone who uses a cane for standing if the evidence shows that the claimant only needs a cane for walking. *See Gipson v. Colvin*, 2013 WL 5945649, at *18 (S.D. Tex. Nov. 6, 2013).

The fundamental question is therefore not whether the ALJ properly disregarded the VE's testimony, as Bass contends, but whether substantial evidence supports the RFC. The Court concludes that it does.

### 1.   Bass's use of a handheld assistive device

Bass challenges the RFC finding that "[t]he claimant needs the opportunity to use a hand-held assistive device *for ambulation* in the work setting." R.17 (emphasis added); Dkt. 13 at 7. She argues that she needs a cane for ambulation *and* standing. Dkt. 13 at 7. To warrant inclusion in an RFC, "there must be medical documentation establishing the need for a hand-

held assistive device" and "describing the circumstances for which it is needed." SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). Here, substantial evidence supports the ALJ's conclusion that Bass needed a cane only for walking.

Bass contends that, without a hand-held assistive device, she "is unable to stand for more than 30 seconds and cannot stand from a seated position." Dkt. 13 at 7. As support, Bass cites a medical record from January 2020. *Id.* (citing R.479). But the January 2020 record does not indicate that Bass needs a cane to *stand*; rather, it states: "patient *walks* with the assistance of a cane." R.479 (emphasis added).

The ALJ also detailed why Bass's testimony about needing a cane to stand contravenes the medical record. R.23; *see also* Dkt. 13 at 7 (citing R.51). For instance, the ALJ highlighted "normal" medical findings contradicting Bass's claims of a more severe limitation. R.24 (citing R.536-37, 626, 689) (B10F, B18F, B22F). And in more recent medical records, Bass's doctors advised her "to not use a wheelchair constantly because she needed to try to use those muscles to avoid losing muscle mass." *Id.* (citing R.617 (B18F)).

No evidence indicates that Bass requires a cane to stand. As the ALJ noted, even Bass did not always maintain that she needed a cane for standing. *See* R.20; R.535 (B10F) (Bass stating that she uses a cane for ambulation and can stand for fifteen minutes). In light of these records, the ALJ's decision to reject Bass's testimony is "precisely the kind[] of determination[] that the ALJ

13

is best positioned to make." *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Substantial evidence supports the ALJ's conclusion.

### 2. Bass's absences due to doctors' appointments

During the hearing, the ALJ asked the VE about the threshold at which absences would preclude employment. R.67. The VE explained that employers "will tolerate" absences of "one to two days per month," but missing two or more days each month "on an ongoing basis ... would be too much." *Id.*

Citing the VE's testimony, Bass insists that she would frequently miss two or more workdays each month due to doctor's appointments. Dkt. 13 at 7. This is an overstatement. During a twenty-month period, Bass scheduled two or more doctor's appointments only six of those months. *See generally* Dkt. 7. The ALJ could properly conclude that these absences are not frequent enough to impede Bass's ability to sustain employment.

### 3. Time off-task

Bass argues that that her pain while seated would make her off-task more than 20% of the time, thereby rendering her unemployable. *See* Dkt. 13 at 7-8; *see also* R.67 (VE's testimony that someone off-task more than 20% of the time would "not be able to sustain full-time competitive employment"). The Commissioner responds that the record gave the ALJ a sufficient basis to conclude that Bass is not as limited as she claimed. *See* Dkt. 15-1 at 6. The Court agrees that the ALJ properly weighed the evidence. *See Chambliss v.*

*Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) ("[T]he task of weighing the evidence is the province of the ALJ.").

When evaluating pain, an ALJ examines a non-exclusive list of seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; (6) measures other than treatment the claimant uses to relieve pain or other symptoms (e.g., lying flat on his or her back); (7) and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998). The ALJ is not required to discuss these factors if no record evidence addresses them. *See* SSR 16-3p, 2017 WL 5180304, at *8.

Here, the ALJ addressed the relevant factors. They included Bass's daily activities, the intensity and frequency of her symptoms, other aggravating factors, and the methods Bass uses to treat her pain. *See* R.23-24.

First, the ALJ found that Bass "engaged in a somewhat normal level of daily activity and interaction." R.24. She prepared simple meals, drove, and could complete light chores. *See* R.298-99. From this, the ALJ reasonably concluded that Bass's daily activities, although somewhat limited, were not "entirely consistent with her allegations of disability." R.24.

Second, the ALJ reasonably found that Bass's description of the duration, frequency, and intensity of her pain did not comport with the medical evidence. *See* R.18. For example, the consultative examiner found that Bass had only mild difficulty changing positions, like "arising from the sitting position." R.537. State agency consultants concluded Bass could sit for six hours, taking normal breaks. R.81. And Bass told her physical therapist that she can "decrease her overall pain with sitting." R.655.

Third, the ALJ considered factors that aggravated Bass's symptoms. *See* R.25 ("Additional environmental limitations are supported to avoid exacerbating her conditions/pain."). And the ALJ accounted for those factors in the RFC. R.17 ("The claimant should avoid more than occasional exposure to extreme cold and vibration and must avoid all exposure to unprotected heights and machinery with moving mechanical parts."). Bass does not identify any exacerbating factors that the RFC omits.

As for medication, treatment, and other remedies, Bass has not undergone aggressive treatments for pain and does not take pain medication

16

"due to stomach complications."  *See* R.323.  Bass primarily uses "coping tactics" like a cane and orthopedic pillows.  R.323-24.  She admitted that potential surgery for pain relief "does not aply [sic]" to her situation.  R.324.  While Bass did see a neurosurgeon, that surgeon concluded she was unlikely to need surgery any time soon.  *See* R.689.  On this record, the ALJ's decision to discount Bass's self-reported pain was reasonable.

Alternatively, Bass claims she will be off task 20% of the workday because she cannot "efficiently use the bathroom."  *See* Dkt. 13 at 8.  She cites her own assertions that she needs help walking to the facilities and sometimes has headaches afterward.  *Id.* (citing R.76, 368, 479).  As explained above, the medical record supports the ALJ's rejection of Bass's assertions regarding the extent of her pain and the impairments to her ability to walk.  In addition, while Bass asserts that she has difficulties using the restroom due to her scoliosis, R.54-55, her MRI results showed only "a little bit of minimal scoliosis."  R.467 (B4F); *see also* R.538 (B10F) ("A mild scoliosis was noted but this is not appreciated clinically.").  The ALJ's decision not to include time off-task in Bass's RFC is therefore based on substantial evidence.

    **B.**    **The ALJ was not required to seek additional expert opinions.**

Bass contends that the ALJ lacked a single "persuasive medical source pertaining to her physical impairments in determining Ms. Bass' RFC."  Dkt.

13 at 8. This contention is inaccurate. Moreover, regulations do not obligate an ALJ to procure additional medical opinions when the RFC is based on substantial evidence.

Despite what Bass claims, the ALJ did not find all medical opinions unpersuasive. The ALJ found the prior administrative findings of State agency medical consultants Dr. Nalini Tella and Dr. Carol Eades "partially supported" by the medical record. R.25 (citing R.72-106, 110-23, 534-49 (B1A, B2A, B6A, B10F)). An ALJ is "not required to adopt [a medical] opinion wholesale." *Traylor v. Comm'r of Soc. Sec.*, 2022 WL 8289171, at *7 (S.D. Tex. Aug. 17, 2022), *adopted by* 2022 WL 4104021 (S.D. Tex. Sept. 8, 2022).

In fact, the ALJ's persuasiveness determination about the State agency medical consultants was *favorable* to Bass. The ALJ concluded the record supported a *more restrictive* RFC than what those experts opined. *See* R.25 (reducing Bass's ability to walk and stand from four to two hours and adding environmental limitations to the RFC). Findings of partial persuasiveness that favor a claimant, even when erroneous, cannot be prejudicial. *See Kemp v. Kijakazi,* 2023 WL 2249162, at *6 (S.D. Tex. Feb. 27, 2023), *adopted by* 2023 WL 3035372 (S.D. Tex. Mar. 15, 2023).

Even if the ALJ had deemed all the expert opinions unpersuasive— which she did not—that still would not require reversal. The Commissioner contends, and the Court agrees, that Bass's argument relies on outdated case

law. *See* Dkt. 15-1 at 16. As of March 2017, regulations no longer prohibit an ALJ "from assessing the claimant's RFC based on other record evidence when [s]he finds all medical opinions to be unpersuasive." *Wilson v. Kijakazi*, 2022 WL 17742005, at *5 (S.D. Tex. Nov. 17, 2022) (internal quotation marks omitted), *adopted by* 2022 WL 17738736 (S.D. Tex. Dec. 16, 2022); *see also* 20 C.F.R. § 404.1520c(a) (no obligation to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from ... medical sources"). "Additional evidence is not necessary—and the ALJ did not commit any error— when the determination was otherwise supported by substantial evidence in the record." *Kemp*, 2023 WL 2249162, at *6.

More fundamentally, Bass overlooks the importance of the substantial evidence standard—particularly as addressed in *Ripley*, 67 F.3d at 557.[3] *See* Dkt. 13 at 8-9. As this Court has explained, *Ripley* does not require an ALJ to obtain additional expert testimony whenever the medical opinions are deemed unpersuasive. *See West v. Kijakazi*, 2022 WL 4137297, at *7 (S.D. Tex. Aug. 26, 2022), *adopted by*, 2022 WL 4138574 (S.D. Tex. Sept. 12, 2022). Rather, the *Ripley* court concluded that remand was warranted because the record

---

[3] Bass also relies on two non-binding Second Circuit cases. *See* Dkt. 13 at 9-10. Both decisions relied on a rule that has been superseded. *See Balsamo v. Chater*, 142 F.3d 75 (2d Cir. 1998); *Selian v. Astrue*, 708 F.3d 409 (2d Cir. 2013).

19

"contained 'a vast amount of medical evidence' establishing an impairment which the ALJ did not consider in formulating the RFC." *Id.* (quoting *Ripley*, 67 F.3d at 557). Indeed, the Fifth Circuit stressed that the "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

Unlike *Ripley*, substantial evidence supports the ALJ's conclusion that Bass has no greater limitations than those reflected in the RFC. *See supra* Part III.A. The ALJ therefore had no obligation to develop the record further. And any claimed failure to develop the record would be harmless because there is no indication that obtaining another expert would have changed the result. *See supra* Part II. The ALJ's decision is therefore affirmed.

## Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff Pascalle Bass's Motion for Summary Judgment (Dkt. 13) and **GRANTS** Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 15). It is further **ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Signed on November 22, 2023, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge